UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DERRICK D. CAIN #256881,

    Plaintiff,

v.                                                                      Case No. 2:10-cv-77
                                                                      HON. GORDON J. QUIST

P. CARUSO, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

        Plaintiff Derrick D. Cain #256881, a former inmate who was released from prison after he filed the instant action, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants P. Caruso, L. Tribley, T. Smith, J. Burke, D. Gerard, R. Reynolds, B. Smith, R. McClellan, R. Warr, D. Vizena, R. Napel, Unknown Barney, Unknown Dowing, Unknown Gerth and the Michigan Department of Corrections.

        Plaintiff's complaint alleges that he is a follower of the African Shetaut Neter Ausarain religion, and is required to follow a strict vegetarian diet, as well as to study text and meditate daily. Plaintiff states that while he was confined at the Baraga Maximum Correctional Facility (AMF), he wrote numerous grievances against Defendants T. Smith and Tribley. On November 6, 2006, Plaintiff filed a suit in federal court against Defendant Smith. On April 5, 2007, Plaintiff was packed up for a transfer. The next day, Plaintiff was told he was going to the Marquette Branch Prison (MBP). Plaintiff complained to Defendant Tribley that MBP did not have his religious diet, she replied that he could file a grievance. Plaintiff was subsequently mocked by

Defendant Warr and other staff. Plaintiff claims that Defendants B. Smith, T. Smith, Warr, and Tribley had Plaintiff transferred to MBP with full knowledge of Plaintiff's dietary requirements.

Plaintiff states that during the two hour transfer in the van, he was denied a urinal by Defendants Reynolds and Jones, despite his request to relieve himself after the first 45 minutes. After two hours, Plaintiff told Defendants Reynolds and Jones that if he was not given a cup or other container, he would have to urinate in the van. Defendant Reynolds then ordered Plaintiff not to urinate in the van. When Plaintiff asked why he was not being allowed to use the restroom, he was told that it was because of his lawsuits. Plaintiff states that he could not control his bladder any longer and urinated on himself in the van. Plaintiff was then taken to segregation by Defendants Reynolds and Napel.

Plaintiff explained that he was on a religious diet, which was not available at MBP. Plaintiff stated that he would not eat until he was provided with his religious diet. Plaintiff subsequently refused to eat for eight meals, until he was told that he would be provided with his religious diet at MBP, and would be transferred back to AMF on April 10, 2007. Plaintiff was held in segregation for four days as the result of his disobeying a direct order not to urinate in the van. Plaintiff requested to be released to the general population on bond, but his request was denied by Defendant Vizena.

On April 10, 2007, Plaintiff arrived back at AMF, where he was placed on top-lock, without first being found guilty of a major misconduct by Defendant McClellan pursuant to a policy enacted by Defendant Caruso. On April 16, 2007, Plaintiff was found "not guilty" and was released from top-lock. Plaintiff continued to file grievances, which were reviewed by Defendant Tribley, who told Plaintiff he should cease his litigious behavior or be prepared for a "ruff [sic] ride." On October 16, 2008, Plaintiff asked Defendant Gerard about a delay in a hearing, and was told that if

he continued to file lawsuits, he would receive misconduct tickets, and his paperwork would be lost when he got transferred. That evening, Plaintiff was packed up for transfer.

Plaintiff contends that Defendant Gerard screened him for transfer to MBP, Defendant Tribley reviewed the screening, and Defendant B. Smith authorized the transfer. However, when Defendants attempted to send Plaintiff to MBP, officials there refused to accept him because they could not accommodate his religious diet. On June 26, 2009, Defendants Burke and Tribley had Plaintiff transferred to the Alger Maximum Correctional Facility (LMF), which could not accommodate Plaintiff's religious diet. Plaintiff claims that Defendant Burke told him that he was being transferred because of his use of the grievance system. Once at LMF, Plaintiff was told that they would attempt to accommodate his diet until he could be transferred to another facility. Plaintiff was denied his property by Defendant Gerth until July 1, 2009.

Plaintiff claims that Defendants violated his rights under the United States Constitution, as well as under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1. Plaintiff seeks damages and equitable relief.

On September 23, 2010, the court dismissed Plaintiff's claims against Defendants MDOC, Napel, McClellan, Vizena and Caruso, and ordered service of the complaint on Defendants Tribley, Warr, B. Smith, T. Smith, Burke, Gerard, Reynolds, Barney, Dowing, and Gerth. (Docket #15.) Presently before the Court is the Defendants' Motion for Summary Judgment, filed pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response, Defendants have filed a reply, and the matter is ready for decision.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the

burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants assert that because Plaintiff has been discharged from prison, any request for injunctive relief is moot. Generally, a prisoner's transfer or release from a particular facility moots his individual claim for declaratory and injunctive relief with respect to that facility. *McKinnon v. Talladega County,* 745 F.2d 1360, 1363 (11th Cir.1984); *See MaGee v. Waters,* 810 F.2d 451, 452 (4th Cir.1987) (holding that a prisoner's request for injunctive relief was moot because he had been transferred). Accordingly, the undersigned concludes that Defendants are entitled to summary judgment on Plaintiff's claims for injunctive relief.

Defendants also state that Plaintiff's RLUIPA claim should be dismissed because damages are unavailable under the RLUIPA. Although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA. In *Sossamon v. Texas*, 131 S. Ct. 1651 (2011), the Supreme Court held that the RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. *See also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA.").

Defendants state that they are entitled to qualified immunity on Plaintiff's remaining claims. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly

established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.*

Defendants Tribley, Warr, Beth Smith, Terri Smith, Burke and Gerard assert that they are entitled to qualified immunity on Plaintiff's First Amendment free exercise claims because the denial of a strict vegetarian diet was brief in duration and was quickly corrected. Defendants rely on the Sixth Circuit's decision in *Colvin v. Caruso*, 605 F.3d 282 (6th Cir. 2010). In *Colvin*, the plaintiff was transferred to the Alger Maximum Correctional Facility (LMF) on February 28, 2006. The plaintiff had been placed in a kosher-meal program pursuant to a 2003 settlement agreement and court order from a prior lawsuit. When the plaintiff discovered that he was going to be transferred, he requested that he be allowed to continue receiving a kosher diet while at LMF. However, as the result of an erroneous belief that the plaintiff had not been approved for the kosher meal program and was Muslim, officials at LMF initially denied the plaintiff kosher-meal status. *Id.* at 286. The district court had held that Chaplain Riley was entitled to qualified immunity on Plaintiff's First Amendment claims because his only involvement was to respond to correspondence sent by the plaintiff, that his belief that the plaintiff was Muslim was reasonable, and that any delay experienced by the plaintiff in receiving a kosher diet at LMF was unintentional and was resolved within a reasonable time. *Id.* at 290.

Defendants assert that the denial of a strict vegetarian diet in this case was brief in duration and quickly corrected. Therefore, they state that pursuant to the court's decision in *Colvin*, they are entitled to qualified immunity. A review of the allegations in Plaintiff's complaint show that Plaintiff was deprived of his religious diet and refused to eat for eight days, until his religious diet was resumed. Unlike the situation in *Colvin*, the facts as asserted by Plaintiff do not support an assertion that this deprivation was the result of a "reasonable mistake," or that the deprivation was

unintentional. *Colvin*, 605 F.3d at 291. Therefore, Defendants Tribley, Warr, B. Smith, T. Smith, Burke, and Gerard are not entitled to qualified immunity on Plaintiff's First Amendment claims.

Defendant Reynolds contends that he is entitled to qualified immunity on Plaintiff's claim that he was forced to urinate in the van during his transfer from AMF to MBP. Defendant Reynolds attests that as a corrections officer working from 8:00 a.m. until 4:00 p.m., he routinely worked in the capacity of transportation staff. Defendant Reynolds states that prior to any transport, prisoners are allowed access to a toilet while in their cell until they are released from the housing unit. In addition, prisoners are offered the use of the toilet near entry control immediately prior to transfer. Defendant Reynolds asserts that on April 6, 2007, at 8:11 a.m., he was part of the transport staff taking Plaintiff to MBP. Defendant Reynolds states that contrary to Plaintiff's allegations, he did not request a urinal for use during transport, nor did he inform Defendant Reynolds or the other transportation officer that he needed a urinal during the ride to MBP. The van arrived at MBP at 9:43 a.m., and was required to wait at the security gate. While awaiting entry, Plaintiff stated that he needed to use the restroom. Defendant Reynolds informed Plaintiff that he had to wait until they gained entry into the level V portion of the prison. At this point, approximately 10:15 a.m., Plaintiff stated that he would urinate in the van. Defendant Reynolds issued a misconduct on Plaintiff for disobeying a direct order and destruction / misuse of property as the result of Plaintiff's actions. However, Plaintiff was found not guilty, as his conduct was determined to be involuntary. Defendant Reynolds states that he was unaware of Plaintiff's litigation activities and that none of his actions were motivated by a desire to retaliate against Plaintiff. (Defendants' Exhibit 6.)

As noted above, Plaintiff claims that Defendant Reynolds told him that he was not being allowed to use the restroom because of his litigiousness. In addition, Plaintiff contends that prior to leaving AMF, he informed Defendant Reynolds that he might need a urinal during transport

because of a medical condition. Plaintiff also states that he requested the use of a urinal during the trip to MBP. Because Plaintiff and Defendant Reynolds contradict each other, there is a genuine issue of material fact regarding Plaintiff's claim that he was denied the use of a urinal in retaliation for filing lawsuits. Therefore, Defendant Reynolds is not entitled to qualified immunity on this claim.

Defendants Barney, Downing, and Gerth assert that they are entitled to qualified immunity on Plaintiff's claim regarding the handling of his religious property. As noted above, Plaintiff claims that Defendant Gerth denied him his property, which included religious books, from June 26, 2009, until July 1, 2009. To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) ("sincerely held religious beliefs require accommodation by prison officials").

In her affidavit, Defendant Gerth attests that Plaintiff was transferred to LMF on June 26, 2009, during the conversion from a single cell Level V facility to a double-bunk Level IV facility. Plaintiff's transfer order stated that the reason for transfer was placement in Level IV. During intake, it was discovered that Plaintiff had a religious diet. Initially, it was thought that Plaintiff could be transferred out of the facility on June 29, 2009. Therefore, Plaintiff's property was opened and he was given his food items. Food service was contacted and they arranged a vegan menu. Plaintiff agreed that he did not want to go through the unpacking of his property, merely to have it packed up again 48 hours later. When it became clear that Plaintiff would not be leaving

LMF on June 29, 2009, the remainder of his property was given to him. Plaintiff did not complain about being without his religious books, but he did tell Defendant Gerth that he believed officials at AMF deliberately had him sent to LMF instead of the Oaks Correctional Facility (ECF) in order to deprive Plaintiff of his religious diet. However, Defendant Gerth attests that she did not believe this to be the case, as the wording on Plaintiff's transfer order stated "Specifically for Level IV placement," which is the same wording on hundreds of other transfers into LMF. (Defendants' Exhibit 11.)

As attachments to Defendant Gerth's affidavit, Defendants offer a copy of the transfer order, which states that the transfer was submitted as an exchange candidate with LMF. (Defendants' Exhibit 11-A.) Defendants also attach a copy of the grievance record for LMF 09-07-2132-24z. The step I response to that grievance indicates that Plaintiff was transferred to LMF due to the Level IV conversion, and states that Plaintiff should have been transferred to ECF because of his diet. The response continues:

> This was discovered during the intake process and LMF immediately began the process to transfer you to ECF. Originally we thought you would be transferring out within two days, which is why you were immediately given the food products in your property. Due to the large amount of transfers occurring at this time it has taken longer than expected; however, you are on the upcoming ride out. In the meanwhile LMF Food Service staff has been designing a vegan menu for you. FS states that you are not in jeopardy of developing rickets or scurvy on this diet.

(Defendants' Exhibit 11-B.)

Defendants also offer a copy of the grievance record for grievance number LMF 09-07-2131-19z, which was responded to at Step I as follows:

> The prisoner is correct that he did not receive his full property within 24 hours as specified in PD 04.07.112. Due to his Neterian religious affiliation and diet, it was deemed that the prisoner should not be

> housed at LMF, so in accordance with PD 05.01.140 and PD 05.01.150, staff at LMF attempted to expedite a transfer for the prisoner to accommodate his dietary and religious needs. First off, the prisoner was permitted to receive clothing, food, and hygiene items in accordance with PD 03.03.130. When it was determined that a transfer would not be immediately facilitated, the remaining property of the prisoner was delivered to him. Staff were in full compliance with PD 03.03.130, as they acted professionally, fairly, and humanely.

(Defendants' Exhibit 11-C.)

The undersigned notes that a review of the record in this case fails to support Plaintiff's First Amendment claim against Defendants Barney, Downing and Gerth because there is no indication that the deprivation of Plaintiff's religious books for a period of a few days infringed on his ability to freely exercise his religious beliefs. Moreover, in the opinion of the undersigned, Plaintiff's treatment at LMF between June 26, 2009, and July 1, 2009, mirrored that of the plaintiff's treatment in *Colvin v. Caruso*, 605 F.3d 282 (6th Cir. 2010). As in *Colvin*, Plaintiff in this case was transferred to LMF on June 26, 2009. During intake it was discovered that Plaintiff had a religious diet. Defendants at LMF initially thought that Plaintiff could be transferred out of the facility on June 29, 2009, so Defendants opened Plaintiff's property and gave him his food items. A vegan menu was arranged and Plaintiff agreed that he did not want to go through the unpacking of his property, merely to have it packed up again 48 hours later. When it became clear that Plaintiff would not be leaving LMF on June 29, 2009, the remainder of his property was given to him. Therefore, it is clear that Defendants Barney, Downing, and Gerth immediately took action to provide Plaintiff with his religious diet and acted reasonably in failing to unpack the remainder of Plaintiff's property. Moreover, any delay experienced by Plaintiff in receiving his religious reading material while at LMF was initially agreed to by Plaintiff and was resolved within a reasonable time. *Id.* at 290.

Consequently, the undersigned recommends that Defendants Barney, Downing and Gerth be granted summary judgment.

Finally, Defendants state that some of Plaintiff's claims are barred by the three year statute of limitations. Defendants state that for purposes of the statute of limitations, Plaintiff's claim was not filed until April 22, 2010, the date that *in forma pauperis* status was granted. Therefore, Defendants contend that any claims which occurred prior to April 22, 2007, are barred by the three-year statute of limitations. Defendants state that this includes claims arising from Plaintiff's transfer on April 6, 2007, his urination in the van, and his deprivation of meals for eight days while at MBP. In support of this allegation, Defendants rely on two non-prisoner civil cases. However, Defendants fail to take into account the fact that under Sixth Circuit precedent, a prisoner action is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Plaintiff dated his original complaint on March 17, 2010, and it was received by the Court on April 8, 2010. Thus, it must have been handed to prison officials for mailing at some time between March 17 and April 8 of 2010. For purposes of this report and recommendation, the Court is required to give Plaintiff the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)). Therefore, Defendants contention that claims which arose in the early part of April 2007 are barred is without merit.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment with regard to Plaintiff's claims for injunctive relief and his claims for damages under the RLUIPA. In addition, Defendants Barney, Downing and Gerth are entitled to summary judgment on Plaintiff's First Amendment

claims. However, because there is a genuine issue of material fact regarding Plaintiff's First Amendment claims against Defendants Tribley, Warr, B. Smith, T. Smith, Burke, Gerard, and Reynolds, Defendants are not entitled to summary judgment on these claims. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (docket #63) be granted in part as set forth above.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  January 31, 2012